**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG**

**IN RE: MONITRONICS
INTERNATIONAL, INC.,
TELEPHONE CONSUMER
PROTECTION ACT LITIGATION**

-------------------------------------

**MDL NO. 1:13-MD-2493
(BAILEY)**

**THIS DOCUMENT RELATES TO ALL CASES**

## ORDER GRANTING SUMMARY JUDGMENT

Pending before this Court are Defendant UTC Fire & Security Americas Corporation, Inc.'s Motion for Summary Judgment [Doc. 735] and Defendant Honeywell's Motion for Summary Judgment [Doc. 761]. Both motions have been fully briefed and are ripe for decision.

Defendants UTC Fire and Security Americas Corporation, Inc. ("UTC") and Honeywell International, Inc. ("Honeywell") seek summary judgment on the issue of liability in this multi-district litigation case, consisting of, at this time, 30 cases.

All cases are filed seeking damages under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227(b) and (c). These cases contain allegations that UTC and/or Honeywell are vicariously liable for calls made in violation of the Act. There are no allegations that UTC or Honeywell actually placed the telemarketing calls.

### Legal Standard

Rule 56(e) of the Federal Rules of Civil Procedure provides that "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–

by affidavits or as otherwise provided in this rule– set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

Rule 56 further provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250.

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.  Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323-25; *Anderson*, 477 U.S. at 248.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249 (citations

2

omitted).

### Discussion

"The TCPA was enacted in response to '[v]oluminous consumer complaints about abuses of telephone technology.' ***Mims v. Arrow Financial Services, LLC,*** 132 S.Ct. 740, 744 (2012). In ***Mims***, the Supreme Court summarized Congress' findings on the matter:

> In enacting the TCPA, Congress made several findings .... 'Unrestricted telemarketing,' Congress determined, 'can be an intrusive invasion of privacy.' TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings) (internal quotation marks omitted). In particular, Congress reported, '[m]any consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes.' ***Ibid.*** (internal quotation marks omitted). '[A]utomated or prerecorded telephone calls' made to private residences, Congress found, were rightly regarded by recipients as 'an invasion of privacy.' ***Ibid.*** (internal quotation marks omitted).

***Id***. at 745.

"The unanimous decision in ***Mims*** also isolated four practices that the TCPA was designed to halt:

> [T]he TCPA principally outlaws four practices. First, the Act makes it unlawful to use an automatic telephone dialing system [('autodialer')] or an artificial or prerecorded voice message, without the prior express consent of the called party, to call any ... cellular telephone, or other service for which the receiver is charged for the call. *See* 47 U.S.C. § 227(b)(1)(A). Second,

3

the TCPA forbids using artificial or prerecorded voice messages to call residential telephone lines without prior express consent. § 227(b)(1)(B). Third, the Act proscribes sending unsolicited advertisements to fax machines. § 227(b)(1)(C). Fourth, it bans using automatic telephone dialing systems to engage two or more of a business' telephone lines simultaneously. § 227(b)(1)(D).

*Id*. at 745." ***Mey v. Honeywell Intern., Inc.***, 2013 WL 1337295, *1 (S.D. W.Va. March 29, 2013) (Copenhaver, J).

"The TCPA is a remedial statute and thus entitled to a broad construction. *See, e.g.,* ***Holmes v. Back Doctors, Ltd.,*** 695 F.Supp.2d 843, 854 (S.D. Ill. 2010) ('It is true that ... the TCPA is a remedial statute.'). As such, it 'should be liberally construed and should be interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers.' ***Scarborough v. Atlantic Coast Line R. Co.,*** 178 F.2d 253, 258 (4th Cir. 1950). At the same time, a remedial purpose 'will not justify reading a provision "more broadly than its language and the statutory scheme reasonably permit."' ***Touche Ross & Co. v. Redington,*** 442 U.S. 560, 578 (1979) (quoting ***SEC v. Sloan,*** 436 U.S. 103, 116 (1978))." *Id.* *See also* ***In re Monitronics Intern., Inc., Tel. Consumer Protection Act Litigation***, 2015 WL 1964951, *3 (N.D. W.Va. April 30, 2015) (Keeley, J) (same).

Movants do not dispute that there can be vicarious liability on the part of a seller under the TCPA, nor could they. ***Smith v. State Farm Mut. Auto Ins. Co.***, 30 F.Supp.3d 765 (N.D. Ill. 2014); ***Kristensen v. Credit Payment Svcs.***, 12 F.Supp.3d 1292 (D.Nev. 2014); ***Mey v. Honeywell Intern., Inc.***, 2013 WL 1337295 (S.D. W.Va. March 29, 2013);

4

*Cunningham v. Kondaur Capital*, 2014 WL 8335868 (M.D. Tenn. Nov. 19, 2014), report and recommendation approved, 2015 WL 1412737 (M.D. Tenn. Mar. 26, 2015).

"In *Charvat v. EchoStar Satellite, LLC,* 630 F.3d 459, 468 (6th Cir. 2010), the Sixth Circuit was faced with the issue of whether the TCPA and its accompanying regulations permitted a plaintiff to recover damages under Sections 227(b) and (c) from a defendant that did not place any illegal calls but whose independent contractors did so in attempts to sell the products and services of the defendant. The Sixth Circuit invoked the doctrine of primary jurisdiction and referred the matter to the Federal Communications Commission ("FCC") to allow the agency to interpret certain provisions of the TCPA and its accompanying regulations. The FCC issued a declaratory ruling clarifying that, even though a seller may not have initiated or made a call under the TCPA, the seller may nonetheless be vicariously liable under the TCPA based on federal common law principles of agency for violations of Sections 227(b) and (c) that are committed when a third-party telemarketer initiates or places an unlawful call on behalf of the seller. *In re Dish Network, LLC,* 28 FCC Rcd. 6574, 2013 WL 1934349 (May 9, 2013)." *Cunningham v. Kondaur Capital*, 2014 WL 8335868, at *5 (M.D. Tenn. Nov. 19, 2014), report and recommendation approved, 2015 WL 1412737 (M.D. Tenn. Mar. 26, 2015).

The FCC opined that "a seller cannot avoid liability simply by delegating placing the call to a third-party. The FCC determined that 'while a seller does not generally "initiate" calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of [ ] section 227(b) ... that are committed by third-party telemarketers.' *See*

5

*id.* at 6574.  This includes 'a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification.'  *Id.* at 6584."  ***Hossfeld v. Gov't Employees Ins. Co.***, 88 F. Supp. 3d 504, 510 (D. Md. 2015) (Quarles, J).

The FCC also stated:

[T]he seller is in the best position to monitor and police TCPA compliance by third-party telemarketers. . . .  We thus agree that, consistent with the statute's consumer protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules. . . .  By contrast, allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions.  This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. . . .  Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief.

***Melito v. Am. Eagle Outfitters, Inc.***, 2015 WL 7736547, at *5 (S.D.N.Y. Nov. 30, 2015), quoting 28 FCC Rcd., at 6588.

6

"Even if **Chevron**[1] deference does not apply to that ruling because it arguably does not have the force of law and arguably was not promulgated under the FCC's rulemaking authority, **Skidmore**[2] deference applies because the FCC's reasoning is sound." **Kristensen v. Credit Payment Servs.**, 12 F.Supp.3d 1292, 1300 (D. Nev. 2014).

In this case, however, the parties have agreed that the FCC determination is entitled to **Chevron** deference.

The plaintiffs do not contend that either movant is directly liable, nor could they. "The FCC's ruling in **In re Dish Network, LLC** clearly indicates that, in the context of telemarketing telephone calls [and text messages], direct liability under the TCPA applies only to entities that initiate the phone calls:

> Our rules have long drawn a distinction between the telemarketer who initiates a call and the seller on whose behalf a call is made. In accordance with those rules, as we explain below, we clarify that a seller is not directly liable for a violation of the TCPA unless it initiates a call, but may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer.

28 F.C.C. Rcd. at 6582, ¶ 24." **Cunningham v. Kondaur Capital**, 2014 WL 8335868 (M.D. Tenn. November 19, 2014).

"Direct liability under the TCPA, however, applies only to entities that 'initiate' the telemarketing calls. See **In re Joint Petition filed by Dish Network, LLC,** 28 F.C.C.R.

---

[1] **Chevron v. Natural Res. Def. Council**, 467 U.S. 837 (1984).

[2] **Skidmore v. Swift & Co.**, 323 U.S. 134 (1944).

6574, 6582 ¶ 24 (2013) (hereinafter, the "FCC Ruling" or "*Dish Network*") ("[W]e clarify that a seller is not directly liable for a violation of the TCPA unless it initiates a call ...."); *Golan v. Veritas Entm't, LLC*, 2014 WL 2095310, at *4 (E.D. Mo. May 20, 2014) ("[A] seller is not directly liable for a TCPA violation unless it initiates [the] call."). A person or entity "initiates" a telephone call when "it takes the steps necessary to physically place a telephone call." *See FCC Ruling*, 28 F.C.C.R. at 6583 ¶ 26. Accordingly, a seller generally does not "initiate" calls placed by third-party telemarketers. *See id.* at 6593 ¶ 48." *Smith v. State Farm Automobile Ins. Co.*, 30 F.Supp.3d 765, 771 (N.D. Ill. 2014).

The FCC concluded in *DISH Network* that "a seller does not generally 'initiate' calls made through a third-party telemarketer within the meaning of the TCPA," and may only "be held vicariously liable under federal common law principles of agency for violations ... that are committed by third-party telemarketers," *Palm Beach Golf Ctr.- Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1255 (11th Cir. 2015).

While there can be no direct liability on the part of a seller, "a seller may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *DISH Network*, 28 F.C.C.R. at 6584.

"The classical definition of 'agency' contemplates 'the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control." Potential liability under general agency-related principles extends beyond classical agency, however. A principal may be liable in circumstances where a third party has apparent (if not actual)

8

authority.  Such '[a]pparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal.'  Other principles of agency law may support liability in particular cases.  For example, a seller may be liable for the acts of another under traditional agency principles if it ratifies those acts by knowingly accepting their benefits.  Such ratification may occur 'through conduct justifiable only on the assumption that the person consents to be bound by the act's legal consequences."  ***DISH Network***, 28 F.C.C. Rcd. 6586–87 (2013).

"An entity may be held vicariously liable for violations of the TCPA 'under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification.'  ***DISH Network***, 28 F.C.C.R. at 6582 ¶ 28.  'Formal agency,' as the FCC calls it, is also known as 'actual authority.'  Actual authority may be express or implied.  ***Bridgeview Health Care*** [***Ltd. v. Jerry Clark***], 816 F.3d at 938–39 [(7th Cir. 2016)].  An agent has express actual authority when the principal expressly grants the agent the authority to perform a particular act.  'While express actual authority is proven through words, implied actual authority is established through circumstantial evidence.'  ***Id***. at 939.  A principal grants implied actual authority to an agent when the principal's reasonably interpreted words or conduct would cause an agent to believe that the principal consents to have an act done on her behalf.  ***Opp*** [***v. Wheaton Van Lines***], 231 F.3d at 1064 [(7th Cir. 2000)].  'To create apparent authority, the principal must speak, write, or otherwise act toward a third party.'  ***Bridgeview Health Care***, 816 F.3d at 939. Finally, ratification occurs when an agent acts for a principal's benefit and the principal does not

repudiate the agent's actions. ***Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.***, 376 F.3d 664, 677 (7th Cir. 2004). It 'requires that the principal have full knowledge of the facts and the choice to either accept or reject the benefit of the transaction.' ***NECA–IBEW Rockford Local Union 364 Health & Welfare Fund v. A&A Drug Co.***, 736 F.3d 1054, 1059 (7th Cir. 2013)." ***Aranda v. Caribbean Cruise Line, Inc.***, 179 F.Supp.3d 817, 831 (N.D. Ill. 2016)

While the plaintiffs argue that the issue of agency is not susceptible to resolution by summary judgment, "vicarious liability, like any other issue of fact, may be adjudicated summarily only where the evidence would not permit a reasonable jury to find for the nonmoving party. *See **Spitz v. Proven Winners N.A., LLC***, 759 F.3d 724, 731 (7th Cir. 2014) (internal quotation marks omitted) ('Agency is a notoriously fact-bound question, but summary judgment on the existence of an agency relationship is still appropriate when the plaintiff fails to meet her burden in presenting sufficient facts to show that a genuine issue of material fact exists with respect to the agency issue.')." ***Aranda v. Caribbean Cruise Line, Inc.***, 179 F.Supp.3d 817, 829 (N.D. Ill. 2016). *See also **Wynn's Extended Care, Inc. v. Bradley***, 619 Fed.Appx. 216, 218 (4th Cir. 2015); ***Hill v. Lockheed Martin Logistics Mgmt, Inc.***, 354 F.3d 277, 287-99 (4th Cir. 2004) (en banc).

## Actual Agency

With respect to actual agency, Judge Stamp noted in ***Mey v. Pinnacle Security, LLC***, 2012 WL 4009718 (N.D. W.Va. Sept. 12, 2012), that in order to prove actual agency, the plaintiff must show that the defendant controlled or had the right to control the purported agent and, more specifically, the manner and means of the solicitation campaign that was conducted. ***Mey v. Pinnacle Security, LLC***, 2012 WL 4009718 (N.D. W.Va. Sept. 12,

2012), citing **Thomas v. Taco Bell Corp.**, 2012 WL 3047351 (C.D. Cal. June 25, 2012).

This is consistent with the Restatement (Third) of Agency § 1.01, which requires that the agent must be subject to the principal's control.

In their effort to demonstrate actual agency, the plaintiffs cite to a number of facts. These include the fact that the movants may have permitted the persons who purchased from the movants to represent that they are authorized representatives, that telemarketing scripts were provided to the dealers, that the dealers were big players in the business whose loyalty the movants sought to maintain, and that the movants did not move swiftly enough to stop the illegal calling when it came to their attention.

The plaintiffs also describe what they call the "home security sales model." The "model" has three components, each of which plays a critical role in their efforts to sell their products: a manufacturer that provides the home security equipment, a monitoring company that provides monitoring services, and dealers that install the systems. Honeywell and UTC are the manufacturers that provide the home security equipment, defendant Monitronics provides the monitoring service, and defendants such as ISI and VMS are Monitronics authorized dealers that install the systems.

Authorized dealers like ISI and VMS call consumers like plaintiffs and pitch a security system package that consists of a "free" alarm system and a multi-year home security monitoring contract with monthly payments. Monitronics pays the dealer for each monitoring contract and retains a security interest in the dealer's assets to protect against unpaid charges by consumers. The authorized dealer pays Honeywell or UTC a negotiated amount for each home security "kit." The dealers pocket the difference between the revenue from Monitronics and the amount they pay for the kits.

11

In evaluating these arguments, two things must be kept in mind. First, while in-person telemarketing calls may be harassing to the consumer, they do not violate the TCPA. It is only when the calls are "robo-calls" or are made to persons on the do-not-call list that the calls violate the Act. Accordingly, assisting a party in setting up telemarketing centers or providing scripts for in-person calls is not evidence of agency.

Second, "a distributor of goods for resale is normally not treated as an agent of the manufacturer. Restatement of the Law of Agency, 2d § 14J (1957) ('One who receives goods from another for resale to a third person is not thereby the other's agent in the transaction.'); *Stansifer v. Chrysler Motors Corp.,* 487 F.2d 59, 64–65 (9th Cir. 1973) (holding that nonexclusive distributor was not agent of manufacturer where distributorship agreement expressly stated 'distributor is not an agent')." *Asante Techs., Inc. v. PMC-Sierra, Inc.*, 164 F.Supp.2d 1142, 1148 (N.D. Cal. 2001).

There are three cases which this Court finds particularly instructive. The first of these is *Leon v. Caterpillar Industrial, Inc.*, 69 F.3d 1326 (7th Cir. 1995). While *Leon* applies Indiana law, Indiana has judicially adopted section one of the Restatement of Agency, which is the foundation of the federal common law of agency.

In *Leon*, the plaintiff sought to impose liability on Caterpillar for certain modifications made to equipment by Calumet, an authorized Caterpillar dealer, on the basis that Calumet was an agent of Caterpillar. The Seventh Circuit noted the following:

1.    The agreement between the parties specifically stated that Calumet was not the agent of Caterpillar;

2.    Calumet purchases equipment from caterpillar and others to resell, with the

12

prices calculated based upon the quantity of goods purchased.  Caterpillar has no say in the prices that Calumet charges to its customers;

      3.    "Caterpillar has no interest, financial or otherwise, in Calumet, nor does it share in the revenue, profits or losses of Calumet, much less does it have the authority to exercise any control over the day to day operations of Calumet.  The only exceptions are that: (1) Calumet is required to 'maintain a suitable place or places of business at the points shown in Exhibit A [of the agreement] to provide adequate sources of products and mechanical service for the products in the service territory [set forth]. . ..  The location of any additional places of business and the relocation or abandonment of any existing places of business may only be made with the consent of [Caterpillar];' and (2) if Calumet violates any provision of agreement, such as by failing to live up to its 'parts and service responsibilities and performance,' Caterpillar has reserved the right to terminate the agreement.  As part of its contract, Caterpillar reimburses Calumet for warranty work performed on the Caterpillar units, as well as providing that representatives from Calumet must visit those who purchase Caterpillar products from time to time.  69 F.3d at 1330.

      The Seventh Circuit affirmed a finding of no agency.  In doing so, the Court stated:

      1.    the mere existence of a formal licensing or dealership agreement will not create an agency relationship in the absence of evidence that the principal is exercising control over the details of the purported agent's work;

      2.    "the mere express denial of an agency relationship is not itself determinative of the matter.  The true test in such a situation is how much control the principal has over the alleged agent and the intent and functioning of the parties."  ***Dutton v. International Harvester Co.,*** 504 N.E.2d 313, 317 n. 2 (Ind. App. 4th Dist.1987) (citation omitted).

3.    *Leon* discussed ***Wood v. Shell Oil Co.***, 495 So.2d 1034, 1037 (Ala. 1986), in which Shell specified that Parker must remain open 24 hours a day, as well as dictated the architectural style of Parker's service station, and retained the rights to inspect Parker's financial records, and cancel the dealership agreement for "failure of the dealer to comply or exert good faith efforts to carry out the provisions of the dealer agreement."  Finally, Shell required that Parker obtain its permission before displaying any posters or advertisements.  Despite these requirements, the Court held that "Wood has produced no evidence that Shell Oil retained any right of control over the manner in which Parker Shell performed in order to meet the requirements of the lease and dealer agreement.  Although the lease and the dealer agreement specify, in some detail, what Parker Shell must do in order to conform to the terms of these contracts, and gives Shell Oil a right to approve certain aspects of Parker Shell's operation, they do not determine how Parker Shell is to achieve compliance with these terms."  69 F.3d at 1335;

4.    The Restatement (Second) of Agency § 14J provides that "[O]ne who receives goods from another for resale to a third person is not thereby the other's agent in the transaction; whether he is an agent for this purpose or is himself a buyer depends upon whether the parties agree that his duty is to act primarily for the benefit of one delivering the goods to him or is to act primarily for his own benefit;

5.    Although Calumet is allowed to use Caterpillar's name and trademark in its advertisements, the mere fact that Calumet uses Caterpillar's name does not render it an agent of Caterpillar, just as every bar which advertises that they sell a particular brand of beer is not the agent of the brewery whose name they advertise;

6.    "Like an actual agency relationship, an apparent agency is also initiated by

14

a manifestation of the principal." *Chellew*, 460 N.E.2d at 1248 (citations omitted). However, the manifestation is one made by the principal to a third party who in turn is instilled with a reasonable belief that another individual is an agent of the principal. The essential element being there must be some form of communication, direct or indirect, by the principal, which instills a reasonable belief in the mind of the third party. Manifestations or statements made by the agent are not sufficient to create an apparent agency relationship.

The second case which this Court finds instructive is *Makaron v. GE Security Mfg. Co.*, 2015 WL 3526253 (C.D. Cal. May 18, 2015), in which Judge Wu in the Central District of California also considered a motion for summary judgment by UTC in a TCPA case. In granting summary judgment to UTC, Judge Wu stated the following:

1.    UTCFSA sells its equipment, including the Interlogix and GE branded equipment, to independent distributors and dealers, who then resell that equipment to other businesses or consumer end-users. UTCFSA's security equipment can be mixed and matched with other manufacturer's equipment by these resellers, who can put together a complete security system package for the ultimate customers-consumer end-users. UTCFSA provides a Return and Warranty Policy to a distributor or dealer to whom it sells GE or Interlogix-branded security equipment, but this warranty only applies for those who directly purchase from UTCFSA, not consumer end-users. UTCFSA's profits result from the sale of the security equipment to its distributors and dealers.

2.    Thousands of downstream, independent businesses sell UTCFSA's security equipment. These resellers may sell UTCFSA's equipment alongside competitor brands,

such as Honeywell.  The resellers who sell to consumers set their own prices for the security equipment, often offering the equipment free of charge to consumers who sign up for monthly monitoring services.

3.     UTCFSA does engage in its own marketing, but that marketing is limited to business to business marketing, targeted to reach UTCFSA's distributors and dealers. UTCFSA does not market or promote its security equipment to consumer end-users. UTCFSA does not approve, write, or review sales or telemarketing scripts used by dealers in their own marketing or sales.  UTCFSA requires its distributors and dealers to comply with all local, state, and federal laws in their marketing, promotion, and resale of UTCFSA-made security equipment.

4.     UTCFSA owns the Interlogix brand and has a license from GE Trademark Licensing, Inc., pursuant to which it is able to grant limited licensing rights to use the GE trademark and logo to resellers for the purpose of reselling GE-branded security equipment. UTCFSA also has an "authorized dealer" program, whereby authorized dealers are granted a limited license to identify themselves as "[Company Name], An Authorized GE Security Dealer," or as "[Company Name], An Authorized Interlogix Dealer." Authorized dealers also have a limited license to use certain GE and/or Interlogix logos and trademarks in their advertising and marketing materials, in accordance with their agreements with UTCFSA.  Authorized dealers are not permitted to market as or "on behalf of" GE or Interlogix.

5.     The parties agree that UTCFSA did not itself initiate the calls to Plaintiffs (*see* RGD ¶ 37), thus precluding a claim on a direct liability theory; however, Plaintiffs argue UTCFSA is vicariously liable for the calls made in violation of section 227(b)(1).   The

question of vicarious liability is the sole issue before the Court on summary judgment.

6.    Although section 227(b) of the UTCFSA does not explicitly provide for recovery under a vicarious liability theory, the Federal Communications Commission ("FCC"), in a recent 2013 declaratory ruling, interpreted section 227(b) to include liability for sellers under common law vicarious liability principles, including the principles of apparent authority and ratification.  *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6587 (2013) ("While section 227(b) does not contain a provision that specifically mandates or prohibits vicarious liability, we clarify that the prohibitions contained in section 227(b) incorporate the federal common law of agency and that such vicarious liability principles reasonably advance the goals of the TCPA.").  This interpretation of section 227(b) is accorded *Chevron* deference, and the vicarious liability question should be considered under the FCC's stated framework.  *See Gomez v. Campbell–Ewald Co.,* 768 F.3d 871, 878 (9th Cir. 2014) ("Because Congress has not spoken directly to this issue and because the FCC's interpretation was included in a fully adjudicated declaratory ruling, the interpretation must be afforded *Chevron* deference." (citing *Metrophones Telecomms., Inc. v. Global Crossing Telecomms., Inc.,* 423 F.3d 1056, 1065 (9th Cir. 2005)). Both parties agree that the FCC's interpretation should be controlling.

7.    Though the reasoning is somewhat circular, the implication of the FCC's declaratory ruling is that the definition of a "seller" depends on whether the person or entity making the allegedly illegal calls was an agent of the alleged seller.  Even though UTCFSA is technically a "manufacturer" of security equipment that sells to distributors and third-party

17

dealers rather than directly to the consumer, UTCFSA could also be a "seller" under the TCPA if it turns out it has an applicable agency relationship with the entities that made the calls to Plaintiffs in this case.  Thus, UTCFSA's vicarious liability, and its possible designation as a "seller," turns on the agency principles the FCC espoused in its declaratory ruling.

8.      "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." [Restatement (Third) of Agency] § 2.01.  The traditional agency test requires establishing: "(1) a manifestation by the principal that the agent shall act for him; (2) that the agent has accepted the undertaking; and (3) that there is an understanding between the parties that the principal is to be in control of the undertaking."  ***Sun Microsystems [v. Hynix Semiconductor, Inc.***], 622 F.Supp.2d at 899 [(N.D. Cal. 2009)] (citing Restatement (Third) of Agency § 1.01).  A key requirement of classic common law agency is that the principal is "in control" of the agent's actions.  *See **United States v. Bonds**,* 608 F.3d 495, 506 (9th Cir. 2010) ("To form an agency relationship, both the principal and the agent must manifest assent to the principal's right to control the agent.");  ***Lushe v. Verengo Inc.,*** 2014 WL 5794627, at *2 (C.D. Cal. Oct. 22, 2014).

9.      Here, the only evidence that UTCFSA has control of the sales tactics of its third-party distributors and/or authorized dealers is that it licenses the use of the GE and Interlogix trademark to its authorized dealers.  As part of the licensing agreements, UTCFSA restricts the use of the GE and Interlogix trademark and logo, and grants

18

authorized dealers a limited license to identify themselves simply as "An Authorized GE Security Dealer" or "An Authorized Interlogix Dealer" in their marketing materials. Authorized dealers cannot market "as" or "on behalf of" GE or Interlogix.  UTCFSA also requires its distributors and dealers to comply with all local, state, and federal laws in their marketing and sales tactics.  Taking all of these facts together in the light most favorable to Plaintiffs, the evidence does not support a finding that UTCFSA exercises control over the actual marketing of the security equipment after it is sold to distributors and dealers.

10.    Similarly, Plaintiffs have not shown that a reasonable jury could find that authorized dealers acted with apparent authority on behalf of UTCFSA.  "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Restatement (Third) of Agency § 2.03 (2006).  Apparent authority "cannot be established merely by showing that [the alleged agent] claimed authority or purported to exercise it." *NLRB v. Dist. Council of Iron Workers of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997). Rather, it is only established "by proof of something said or done by the [alleged principal], on which [the plaintiff] reasonably relied."  *Id.*

11.    Here, the only arguable "manifestation" UTCFSA made was to SOAS and its other authorized dealers-giving these dealers a limited license to declare themselves authorized dealers of GE Security and/or Interlogix.  However, this manifestation was between UTCFSA and SOAS, not between UTCFSA and consumer end-users such as Plaintiffs.  It is undisputed that UTCFSA does not market to end-users; it only sells and

markets to dealers and distributors of its equipment, who then package and resell that equipment to consumers.  Thus, UTCFSA did not make (or cause to make) any *direct* communications to end-users such that they might think a reseller or dealer was acting on UTCFSA's behalf.

12.    As observed in ***Lushe v. Verengo, Inc.,*** 2015 U.S. Dist. LEXIS 16961 * 8–9 (C.D.Cal. Feb. 2, 2015):

> Apparent authority arises from the principal's manifestations to a third party that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question. [T]he ostensible authority of an agent cannot be based solely upon the agent's conduct. The third party's belief must not only be reasonable, but also "traceable" to the principal's manifestations. *See* Restatement (Third) of Agency § 2.03 (2006).
>
> [Quotation marks and case citations omitted.]

Here, the Plaintiffs have not produced any evidence from which one could trace their belief as to SOAS's apparent authority to UTCFSA's conduct or statements.

13.    As for ratification, on the undisputed facts before the Court, the Defendant would be entitled to summary judgment.  "Although a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it."  ***Batzel v. Smith,*** 333 F.3d 1018, 1036 (9th Cir. 2003).  Here, Plaintiffs have not presented evidence that would support that an applicable principal-agent relationship existed between SOAS (or any other reseller or dealer) and UTCFSA.  Without this prerequisite, UTCFSA could not "ratify" the actions of

its resellers or authorized dealers.

The third case which this Cout finds instructive is *Johansen v. HomeAdvisor, Inc.*, 2016 WL 6432821 (S.D. Ohio October 31, 2016), in which Judge Marbley found no jurisdiction over HomeAdvisor in a TCPA case, inasmuch as the party making the calls in violation of the do-not-call list was not the agent of HomeAdvisor.  In *Johansen*, the only issue was ratification.  In his decision, Judge Marbley stated:

1.     Johansen does not argue that jurisdiction is proper based on (1) a formal agency relationship between HomeAdvisor and One Planet and/or Lead House or (2) apparent authority.  Nor could he; HomeAdvisor's unrefuted supporting declarations show otherwise.  *See* **Kerry Steel**, 106 F.3d at 153 (permitting courts to accept as true uncontroverted factual assertions of the defendant).  Instead, Johansen relies solely on a ratification theory to show that jurisdiction is proper.  ("Plaintiff has sufficiently alleged HomeAdvisor ratified the illegal actions of its agent, One Planet, and its subagents, including Lead House. . ..  Accordingly, Plaintiff has set forth a *prima facie* showing that HomeAdvisor is vicariously liable for One Planet and Lead House's conduct and, therefore, that HomeAdvisor is subject to personal jurisdiction in Ohio.")).  The Court will focus solely on the ratification issue as well.

2.     Johansen argues that personal jurisdiction is proper based on a ratification theory.  In short, he argues that Lead House or One Planet violated the TCPA through Ohio–based telemarketing calls to numbers on the Do Not Call Registry; that HomeAdvisor knowingly benefited from those violations (or, at the very least, turned a blind eye to them); and that, as a result, HomeAdvisor should be subject to suit in Ohio.

21

3.      As explained below, there are two problems with Johansen's ratification argument.  First, HomeAdvisor submitted two unrefuted declarations showing that Lead House, who made the offending calls, was not acting or purporting to act as HomeAdvisor's agent, as required for ratification  Restatement (Third) of Agency, § 4.03 (2006) ("Acts That May Be Ratified").  Second, HomeAdvisor's declarations show that the company neither knew nor should have known that Lead House violated the TCPA when HomeAdvisor accepted Johansen's sales lead, as also required for ratification. *Id.* § 4.06 ("Knowledge Requisite to Ratification").  Both problems prove fatal to Johansen's ratification theory and to his assertion that personal jurisdiction over HomeAdvisor is proper.

4.      In TCPA cases, the Sixth Circuit looks to the Restatement of Agency to determine whether vicarious liability should be imposed.  ***Keating*** [***v. Peterson's Nelnet, LLC***], 615 Fed.Appx. at 371 [(6th Cir. 2015)] (adopting FCC's opinion in ***DISH Network***, which looked, in turn, to "a broad range of [federal common-law] agency principles" for imposing vicarious liability); ***id***. at 373 (adopting Restatement definitions of "actual" and "apparent authority").  Other jurisdictions similarly look to the Restatement of Agency to determine whether a seller has ratified the conduct of third-party telemarketers. *See, e.g.*, ***Kristensen v. Credit Payment Servs., Inc.***, 2015 WL 4477425, at *3 (D. Nev. July 20, 2015) (adopting Restatement (Third) of Agency on ratification in TCPA case); ***Smith***, 30 F.Supp.3d at 779 (same).

5.      Under the Restatement, "[r]atification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) of Agency, § 4.01(1) (2006).  A person may ratify an act of another by

"manifesting assent that the act shall affect the person's legal relations" or by "conduct that justifies a reasonable assumption that the person so consents." *Id.* § 4.01(2).  The Restatement imposes a critical restriction on what *type* of acts may be ratified, however. Under the Restatement, a person may ratify an act *only* "if the actor acted or purported to act as an agent on the person's behalf." *Id.* § 4.03.  As the commentary explains, "[w]hen an actor is not an agent and does not purport to be one, the agency-law doctrine of ratification is *not* a basis on which another person may become subject to the legal consequences of the actor's conduct." *Id.* § 4.03 cmt. b (emphasis added).  This requirement "limits the range of ratifiable acts to those done by an actor who is an agent or who is not an agent but pretends to be." *Id.* § 4.01 cmt. b (citing Restatement (Third) of Agency, § 4.03).

6.    As several courts have explained, "[a]lthough a principal is liable when it ratifies an originally unauthorized tort," such as a TCPA violation, "the principal-agent relationship is still a requisite, and ratification can have no meaning without it." *E.g.*, ***Murray v. Choice Energy, LLC***, 2015 WL 4204398, at *6 (S.D. Ohio July 10, 2015) (quotation omitted) (dismissing TCPA claim based on ratification theory for failure to plead principal-agent relationship);  ***Makaron v. GE Sec. Mfg., Inc.***, 2015 WL 3526253, at *10 (C.D. Cal. May 18, 2015) (granting summary judgment on TCPA claim based on ratification for failure to present evidence that would support an applicable principal-agent relationship).  Without this "prerequisite" principal-agent relationship, a defendant cannot "ratify" the actions of third parties.  ***Makaron***, 2015 WL 3526253, at *10.

Finally, in ***Perry v. Scruggs***, 17 Fed.Appx. 81 (4th Cir. 2001), the Fourth Circuit

stated, in a footnote, that they "also reject the Perrys' argument that the Scruggs Group was liable under the doctrine of agency by ratification.  This doctrine states that 'a principal may ratify the voidable acts of his agent, and such ratification may be express or implied. And where, after a discovery of such acts, the principal, with full knowledge of the facts, acts in such a manner as to unmistakably indicate that he intends to avail himself of the benefits of the contract made by the agent, he will be deemed to have ratified such acts in their entirety.'  *Bank of Occoquan v. Davis*, 155 Va. 642, 156 S.E. 367 (1931). Because we agree with the district court's finding that there was no evidence that Kahler and Hanning acted on behalf of the Scruggs Group, we find that the doctrine of ratification does not apply."  17 Fed.Appx. at 91 n. 1.

After application of the above cases to the facts of this case, this Court holds that the evidence advanced in this case is wholly insufficient to permit the plaintiffs to continue against the movants.

First, the fact that entities were permitted to hold themselves out as authorized dealers or some similar description is insufficient to hold the moving defendants in this case liable.  This Court is well aware that in so ruling, I am rejecting the prior decision of this Court in this case.  In  *Mey v. Monitronics International, Inc.*, 959 F.Supp.2d 927 (N.D. W.Va. 2013), this Court denied a motion for summary judgment on the basis that the fact that VMS was permitted to hold itself out as an authorized dealer cloaked VMS with the apparent authority to act as the agent of UTC.  This Court respectfully disagrees with that ruling.  As noted by *Leon* and echoed in *Makaron*, the mere fact that a dealer uses a suppliers name does not render it an agent of the supplier, just as every bar which

24

advertises that they sell a particular brand of beer is not the agent of the brewery whose name they advertise.

The plaintiffs also contend that the efforts to retain ISI and VMS as customers demonstrate agency. This Court cannot agree. If VMS and ISI were subject to the control of the movants there would be no need to woo their business.

There is no evidence whatsoever that VMS and ISI were acting primarily for the movants' benefit, rather than their own gain. In fact, ISI representatives testified that ISI was acting for its own benefit.

There is no evidence that the moving companies turned a blind eye when they learned of improper and illegal telephone calls. The earliest notice that Honeywell appears to have received of calls placed by or for ISI which violated the TCPA would have been after late April, 2012, when two TCPA suits were filed. There is no indication in the record as to when Honeywell was served with the complaints in these cases.

It must be noted that on August 30, 2012, Keith Baird of Honeywell wrote to ISI Alarms and said, "You stated you can provide documentation confirming you are no longer using the marketing firm in question. Please provide this information asap."

The email also contained a copy of a prior email from Honeywell's legal counsel stating "We really need to nail this company down. You said that they would give us written documentation that would prove that they are no longer working with this company. I understand that they claim that VMS may be using their name, not sure if they are aware of this website, but if not you should share with them AT THE SAME TIME AS YOU TELL THEM WE MUST HAVE PROOF THAT THEY ARE NOT WORKING WITH THIS COMPANY ANY LONGER."

25

These emails indicate that there were prior communications which may not be reflected in the exhibits provided to the Court.

On September 14, 2012, a Honeywell representative again emailed ISI asking "could you please provide feedback on the two requests listed below?

 1) A statement that you are no longer using Robo calls companies.  We would also need the name of the Robo call company that you previously used.

 2) And provide feedback on your internal investigation of this phone #: 425-658-8968 which is linked to your company."

These emails were marked "high importance."

In fact, it appears that the offending calls made using Honeywell's name were made not by ISI, but by a company retained by ISI known as Data Guru.

With respect to UTC, there is little documentation of calls that violate the TCPA, but several emails reference additional training to be provided by UTC to its authorized dealers called "telemarketing ethics"  and "telemarketing standards for dealers."

This Court also does not believe that the plaintiffs should receive additional time to conduct discovery.  It would appear that the plaintiffs have been dilatory in failing to pursue the further deposition of UTC they now claim they need.  *See, e.g.,* ***Patrick v. PHH Mortg. Corp.***, 998 F.Supp.2d 478, 484–85 (N.D. W.Va. 2014) (denying Rule 56(d) request where discovery had been open for 18 months, nonmovants were granted an additional extension to respond to movants' motion for summary judgment, and yet they failed to take necessary discovery).

There appears to be no issue that all documents and written discovery requested

26

by plaintiffs were provided by the movants.  Plaintiffs appear to have made no attempt to reschedule the additional 30(b)(6) deposition that they now claim is necessary, despite having over three months to do so between June 8, 2016, when the stay was lifted [Doc. 660], and the date their Opposition was due.  Plaintiffs did not ask for an additional 30(b)(6) deposition after UTC indicated in its June 2016 brief on the *Spokeo* matter that it would seek leave to file this Motion, or after July 26, 2016, when the Court ordered summary judgment briefing on the issue of vicarious liability. And even after plaintiffs requested (and received) additional time to file their Opposition to UTC's Motion [Doc. 728], they failed to mention the need for further discovery.  Thus, plaintiffs' own actions show that the deposition was not and is not critical, particularly when they fail to articulate any evidence that would be sought that could create a genuine issue of material fact.

For the reasons stated above, Defendant UTC Fire & Security Americas Corporation, Inc.'s Motion for Summary Judgment [Doc. 735] and Defendant Honeywell's Motion for Summary Judgment [Doc. 761] are **GRANTED**.  Defendants UTC Fire & Security Americas Corporation, Inc. and Honeywell International, Inc. are **DISMISSED** from these actions.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** December 22, 2016.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE